Matter of Maunder v B & B Lbr. Co. (2018 NY Slip Op 07810)





Matter of Maunder v B & B Lbr. Co.


2018 NY Slip Op 07810


Decided on November 15, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 15, 2018

526034

[*1]In the Matter of the Claim of ELIZABETH A. MAUNDER, Appellant,
v
B & B LUMBER COMPANY, Respondent, and SPECIAL FUND FOR REOPENED CASES, Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: October 9, 2018

Before: McCarthy, J.P., Devine, Mulvey, Rumsey and

 Pritzker, JJ.

Zimmerman Law Office, Syracuse (Aaron Zimmerman of counsel), for appellant.
Steven M. Licht, Special Funds Conservation Committee, New York City (Jill B. Singer of counsel), for Special Fund for Reopened Cases, respondent.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a decision of the Workers' Compensation Board, filed October 10, 2017, which ruled that claimant was not entitled to a schedule loss of use award for her arms.
Claimant has an established case for occupational disease to her bilateral wrists and for bilateral cubital tunnel syndrome stemming from a work-related accident in 2002. Liability for her claim was transferred to the Special Fund for Reopened Cases in 2012. Claimant underwent cubital tunnel release surgeries to both elbows in 2012 and, in 2014, she was awarded a 10% schedule loss of use (hereinafter SLU) of each hand. In 2015, claimant underwent revision ulnar nerve decompression and transposition surgery to both elbows. Nathan Everding, claimant's treating orthopedic surgeon, thereafter opined that she had a 25% SLU of each elbow. After Everding testified, a Workers' Compensation Law Judge concluded that there was insufficient medical evidence that claimant had an SLU in either arm, and the Workers' Compensation Board upheld that decision. Claimant appeals.
Claimant argues that the Board erred in finding that Everding's testimony and reports were insufficient to support his medical opinion regarding a 25% SLU to her arms and that, since there were no conflicting medical opinions, her medical evidence must be credited per Workers' Compensation Law § 21 (5). Initially, a schedule award is not given for an injury but for the [*2]"residual permanent physical and functional impairments" to statutorily-enumerated body members (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 1.5, at 10 [2012] [hereinafter guidelines]; see Workers' Compensation Law § 15 [3] [a]-[v]; Matter of Taher v Yiota Taxi, Inc., 162 AD3d 1288, 1289 [2018]; Matter of Empara v New Rochelle Sch. Dist., 130 AD3d 1127, 1129 [2015], lv denied 26 NY3d 911 [2015]). Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve (see Matter of Tobin v Finger Lakes DDSO, 162 AD3d 1286, 1287 [2018]; Matter of Kondylis v Alatis Interiors Co., Ltd., 116 AD3d 1184, 1185-1186 [2014]). Consequently, "judicial review is limited, and the Board's determination will not be disturbed as long as it is supported by substantial evidence" (Matter of Maloney v Wende Corr. Facility, 157 AD3d 1155, 1156 [2018]; see Matter of Wohlfeil v Sharel Ventures LLC, 32 NY3d 981, 982 [2018]; Matter of Zamora v New York Neurologic Assoc., 19 NY3d 186, 192-193 [2012]). Further, "[t]he Board is free to accept or reject all or part of medical evidence that is offered" (Matter of Parody v Old Dominion Frgt. Line, 157 AD3d 1118, 1120 [2018]).
While Everding opined that claimant had a 25% SLU in both elbows, he was not able to explain how he arrived at this percentage and, more to the point, his opinion was not based upon or consistent with the guidelines (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 2.4, at 22-23; § 4.3, at 35 [B] [2012])[FN1]. Section 2.4 of the guidelines sets forth the parameters for medical experts to follow in determining whether an SLU award is appropriate for elbow or arm permanent impairments [FN2]. Importantly, Everding testified that claimant had full range of motion bilaterally in both elbows and her fingers, and he did not testify to any extension or flexion defects (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 2.4, at 22 [2012]). Everding explained that he based his SLU opinion on (1) "residual numbness in the ulnar nerve" causing loss of sensation to [claimant's] fingers, (2) claimant's report of "some occasional pain" consistent with neurological deficit and surgery, and (3) "a little bit" of weakness in her grip strength, which he was unable to compare to normal grip strength. His earlier reports did not reference the guidelines with any specificity, and he conceded that the guidelines "left up in the air" — i.e., did not address — the pain and residual numbness symptoms that he found. Everding conceded that he did not find any of the "special considerations" such as laxity of either elbow. He also acknowledged that he had not taken into consideration the guideline concerning entrapment neuropathies to the ulnar nerve-cubital tunnel syndrome, which permits an SLU of an arm or hand only where entrapment of the ulnar nerve at the elbow is "accompanied with defects at the elbow" (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 4.3 [B], at 35 [2012] [emphasis added]). Everding made no finding of elbow defects and explained that he found a loss of use to the arms because that is where claimant complained of pain.
As the Board correctly found, the guidelines do not support a 25% SLU of each arm based upon Everding's testimony. This conclusion is not altered by the fact that Everding's testimony was the only evidence before the Board, as the Board may reject medical evidence as insufficient "even where no opposing medical proof is presented" (Matter of Kondylis v Alatis Interiors Co., Ltd., 116 AD3d at 1186 [internal quotation marks, ellipses and citations omitted]). Claimant's reliance on the presumption that "the contents of medical and surgical reports introduced in evidence by claimants for compensation shall constitute prima facie evidence of fact as to the matter contained therein" (Workers' Compensation Law § 21 [5]) is misplaced [*3]because a "claimant generally has the burden in the first instance of proving facts sufficient to support [the] claim for compensation" (Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 468 [2014]). As neither the reports nor Everding's testimony established an SLU to the arms/elbows under the guidelines, her claim was properly denied.
McCarthy, J.P., Devine, Mulvey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.



Footnotes

Footnote 1: The brief by the Special Funds Conservation Committee quotes, apparently mistakenly, from the updated guidelines effective January 1, 2018, after the Board's decision, and no argument is raised that the updated guidelines apply here (see Workers' Compensation Law § 15 [3] [x]; Workers' Compensation Guidelines for Determining Impairment [1st ed 2017]).

Footnote 2: The guidelines use the terms "elbow" and "arm" interchangeably (New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 2.4, at 22-23 [2012]).